**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LUTHER LOPEZ, *Plaintiff*, v. BLINK FITNESS LINDEN and TODD MAGAZINE, *Defendants*. | Civil Action No. 17-6399 (JMV)(MF)<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

In this case, *pro se* Plaintiff Luther Lopez alleges that Defendants Blink Fitness Linden ("Blink") and Blink's CEO Todd Magazine (collectively "Defendants"), improperly charged him after he canceled his gym membership. Currently pending is Defendants' motion to dismiss, D.E. 8, Plaintiff's Complaint, D.E 1. The Court reviewed the parties' submissions[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons discussed below, Defendants' motions to dismiss is **GRANTED**.

---

[1] The following briefs were submitted in connection with the motion: Defendants' Brief in support of its Motion to Dismiss the Complaint will be referred to hereinafter as "Defs. Br." (D.E. 8); Plaintiff's Brief in Opposition will be referred to hereinafter as "Pl. Opp. Br." (D.E. 11); Defendants' Reply Brief will be referred to hereinafter as "Defs. Reply." (D.E. 12).

## I. BACKGROUND[2]

On approximately May 8, 2017, Plaintiff signed up for a promotional trial gym membership at the Linden, New Jersey location of Defendant Blink. Compl. ¶ 15. On May 15, 2017, Plaintiff terminated his membership before the trial period expired. *Id.* ¶ 16. Plaintiff informed an unnamed employee at Blink that he wanted to cancel his membership, and the employee told Plaintiff "no problem [I] will take care of it." *Id.* ¶¶ 16-17. In July 2017, Blink electronically withdrew $44.76 from Plaintiff's debit card without Plaintiff's authorization. *Id.* ¶¶ 18-19, 27.

On May 7, 2017, Plaintiff and Blink executed a Membership Agreement ("Agreement"). D.E. 8-7. The Agreement contained a section entitled "Electronic Funds Transfer Authorization," which provided as follows:

> I, Buyer, *authorize my bank* to make my Blink monthly payment by the method indicated below, and post it to my account. I understand that the monthly dues will be $20.00 plus $1.38 tax and *will be transferred* on the 1st of each month beginning June 2017. The monthly dues *will continue to be deducted each month* at the monthly rate then in effect. Blink will provide thirty (30) days' notice to Member of any change in the monthly or annual rate. *I understand I will be billed an annual fee.* I, Buyer, *authorize my bank to make my Blink annual fee payment* by the method indicated below, and post it to my account. I understand that the annual fee will be $45.00 plus $3.09 tax and will be transferred on the 3rd day of August each year beginning August 2017. If this agreement is for an annual term, I understand this Agreement is for a minimum of twelve (12) months after which time may terminate my membership at any time by providing 45 days' written notice either in person at the club or by certified or registered mail to Blink. *If I wish to terminate before the end of the twelve (12) month term, I understand I must provide 45 days' written notice and payment of a $60 buyout fee.* The Additional Membership Agreement Terms set forth below are part of this Agreement and by signing below I acknowledge and agree to abide by all such Additional Membership

---

[2] The factual background is taken from the Complaint, D.E. 1. When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

2

> Agreement Terms. I understand that, depending on the start date of
> my membership, payment for the first month of membership may
> include a pro-rated portion of the monthly fee.

*Id.* at 1 (emphases added).

Plaintiff digitally signed the Agreement and paid by credit card. *Id.* Plaintiff signed up for the "Blue Monthly" promotion, for which he paid $5.34. *Id.* Plaintiff acknowledged that he was entitled to receive a copy of the Agreement. *Id.* at 2. The Agreement also indicated how Plaintiff could terminate the contract:

> You may cancel this contract at any time before midnight of the third
> operating day after receiving a copy of this contract. If you choose
> to cancel this contract, *you must either: 1. Send a signed and dated
> written notice of cancellation by registered or certified mail, return
> receipt requested; or 2. Personally deliver a signed and dated
> written notice of cancellation* to: Blink Linden 1701 West Edgar
> Road, Linden, New Jersey 07036[.] If you cancel this contract
> within the three-day period, you are entitled to a full refund of your
> money. If the third operating day falls on a Sunday or holiday,
> notice is timely given if it is mailed or delivered as specified in this
> notice on the next operating day. Refunds must be made within 30
> days of receipt of the cancellation notice to the health club.

*Id.* (emphasis added).

Furthermore, the Agreement provided a chart regarding the "Annual Maintenance Fee" ("Fee"), including dates of when the Fee would be due – annually beginning on the third day of the third month after membership enrollment. *Id.* The Fee section also indicates that "[m]embers will be responsible for payment of the annual fee if a cancellation is requested on or after the 15th of [sic] the month preceding the annual fee billing date. Such cancellation requests are also subject to the standard cancellation terms contained in the members' agreements." *Id.* The Agreement also contains "Additional Membership Agreement Terms," which again reviews a member's rights regarding cancellation. *Id.* at 3.

Plaintiff does not contest the validity of the Agreement nor does he contest that he received a copy when he signed up for the membership. Instead, Plaintiff attaches a May 8, 2017 email from Blink with a membership confirmation number, an order date, and the "Blue Start Up Fee" charge of $5.34. Pl. Opp. Br. at Ex A. The email also indicates that the "[a]nnual fee is collected on the 3rd day of the 3rd month after joining and on the anniversary of this date moving forward." *Id*. The email further contains a hyperlink to the Agreement.

Plaintiff filed his Complaint on August 25, 2017, listing three counts: (1) violation of the Electronic Funds Transfer Act; (2) conversion; and (3) breach of contract. Compl. at 4-6. On November 29, 2017, Defendants filed the current motion to dismiss. D.E. 8. Plaintiff filed opposition, D.E. 11, to which Defendants replied, D.E. 12.

## II.  LEGAL STANDARD[3]

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal

---

[3] Plaintiff argues that summary judgment is not appropriate, but Defendants filed a motion to dismiss. Because Plaintiff is proceeding as *pro se*, the Court treats his opposition as to the motion to dismiss.

4

quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

Because Plaintiff is proceeding *pro se*, the Court construes the pleadings liberally and holds him to a less stringent standard than those filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, the "Court need not…credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.'" *D'Agostino v. CECOM RDEC*, 2010 WL 3719623, at *1 (D.N.J. Sept. 10, 2010).

In reviewing a motion to dismiss, a court may consider "exhibits attached to the complaint and matters of public record" as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). A court may consider "a document integral to or explicitly relied upon in the complaint." *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (citation omitted). Here, the Complaint indicates that Plaintiff signed up for membership, Compl. ¶ 15, and the parties do not

dispute that the Agreement is the document that he signed. As a result, the Court considers the Agreement in deciding the current motion.

While a party can make factual allegations, a court is not bound to accept them as true when the allegations are clearly contradicted by an underlying document on which the allegations rely. *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n. 8 (3d Cir.1994) ("Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control."); *see also Goldenberg v. Indel, Inc.*, 741 F. Supp. 2d 618, 624 (D.N.J. 2010). Here, Plaintiff's allegations in the Complaint are undercut by the Agreement.

### III. LEGAL ANALYSIS

#### A. Defendant Todd Magazine

As to Defendant Magazine, the Complaint merely alleges that he is the "Chief Executive Operation officer for Blink Fitness." Compl. ¶ 6. There are no assertions of any impropriety as to Magazine, much less plausible allegations. Therefore, Defendant Magazine is dismissed from the matter without prejudice.

#### B. Count 1: Electronic Funds Transfer Act

Count One alleges a violation of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. §1693 *et seq*. Plaintiff asserts that Defendants violated the EFTA by electronically withdrawing funds from his "bank accounts or/and debit card(s)" without first obtaining his written authorization. Compl. ¶ 24. 15 U.S.C. § 1693e, entitled "Preauthorized transfers," provides as follows:

> (a) A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only *in writing*, and a copy of such authorization shall be provided to the consumer when made. A consumer may stop payment of a preauthorized electronic fund transfer by notifying the financial institution orally or in writing at any time up to three business days preceding the

scheduled date of such transfer. The financial institution may require written confirmation to be provided to it within fourteen days of an oral notification if, when the oral notification is made, the consumer is advised of such requirement and the address to which such confirmation should be sent.

(b) In the case of preauthorized transfers from a consumer's account to the same person which may vary in amount, the financial institution or designated payee shall, prior to each transfer, provide reasonable advance notice to the consumer, in accordance with regulations of the Bureau, of the amount to be transferred and the scheduled date of the transfer.

The EFTA defines a "preauthorized electronic fund transfer" as an "electronic fund transfer authorized in advance to recur at substantially regular intervals." 15 U.S.C. §1693a(10); 12 C.F.R. § 1005.2(k). "Written authorization from the consumer can be provided electronically." *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1098 (C.D. Cal. 2015) (internal quotation marks omitted). "The term 'electronic signature' means an electronic sound, symbol, or process, attached to or logically associated with a contract or other record and executed or adopted by a person with the intent to sign the record." *Id.* (quoting *Berry v. Webloyalty.com, Inc.*, 2011 WL 1375665, at *8 (S.D. Cal. Apr. 11, 2011)) (internal quotation marks omitted). The EFTA's provisions on "preauthorized electronic fund transfers" were designed to "protect consumers who arrange for regular payments (such as insurance premiums or utility bills) to be deducted automatically from their [b]ank accounts." *Hankey v. Direct TV, Inc.*, 2016 WL 828119, at *2 (M.D. Penn. Feb. 29, 2016) (internal quotations omitted).

In *L.S. v. Webloyalty.com, Inc.*, 673 F. App'x 100, 106 (2d Cir. 2016), the Second Circuit upheld the dismissal of a plaintiff's EFTA claim because the plaintiff had authorized a transfer of funds in accordance with the terms disclosed on an enrollment page by entering his personal information on the webpage. The Second Circuit therefore found that the defendant did not violate the EFTA in debiting the appellant's account. *Id.* In *In re Vistaprint Corp Mktg. & Sales Practices*

7

*Litig.*, 2009 WL 2884727, at *9 (S.D. Tex. Aug. 31, 2009), *aff'd sub nom. Bott v. Vistaprint USA Inc.*, 392 F. App'x 327 (5th Cir. 2010), the court dismissed plaintiffs' EFTA claim because the plaintiffs provided the defendants their credit/debit card numbers and also typed their email addresses on defendants' webpages, which clearly authorized defendants to charge their accounts.

Here, the Agreement was in writing and electronically signed by Plaintiff. As noted, electronic signatures are permitted under the EFTA. As also noted, to the extent that the Complaint's allegations conflict with the Agreement, the Agreement controls. *See ALA, Inc.*, 29 F.3d at 859 n. 8. The Agreement permitted Defendants to withdraw the funds at issue. Pursuant to the clear terms of the Agreement, Plaintiff could only terminate his membership in writing. Here, Plaintiff admittedly did not do so. He instead told the unnamed Blink employee that he wanted to cancel his membership. In sum, the Agreement reflects that there was no violation of the EFTA despite the Complaint's allegations to the contrary.

For the foregoing reasons, Plaintiff has not plausibly pled a violation of the EFTA, and Count 1 is dismissed.

### C. Counts 2 and 3: Conversion and Breach of Contract

Count 2 alleges conversion. Plaintiff asserts that he owned the funds in the bank and that Defendants deprived him of those funds when it withdrew money. Conversion is the "wrongful exercise of dominion or control over property of another without authorization and to the exclusion of the owner's rights in that property." *City of Atl. City v. Zemurray St. Capital, LLC*, 2017 WL 6638203, at *17 (D.N.J. Dec. 29, 2017) (quoting *Chicago Title Ins. Co. v. Ellis*, 409 N.J. Super. 444, 456 (App. Div. 2009)) (internal quotation marks omitted). Under New Jersey law, the elements of conversion are "(1) the existence of property, (2) the right to immediate possession thereof belonging to plaintiff, and (3) the wrongful interference with that right by defendant." *Id.*

The Complaint does not plausibly allege conversion. Here, pursuant to the Agreement, Defendant Blink had the right payment(s) at issue. "It is essential that the money converted by a tortfeasor must have belonged to the injured party." *Advanced Enterprises Recycling, Inc. v. Bercaw*, 376 N.J. Super. 153, 161 (App. Div. 2005) (quoting *Commercial Ins. Co. of Newark v. Apgar*, 111 N.J. Super. 108, 115 (Law Div.1970)) (internal quotations omitted). Plaintiff argues that he did not give authorization to withdraw money, but pursuant to the Agreement, he clearly did when he signed up for membership. Similarly, there was no wrongful interference by Blink because it was authorized by the Agreement to the money Plaintiff owed.

Count 3 asserts breach of contract. Plaintiff argues that he entered into a contractual agreement that allowed him to terminate his membership at no additional cost nor with any additional charges, and that Defendants breached the terms of the contract. To state a claim for breach of contract under New Jersey law, a party must allege (1) the existence of a contract; (2) breach of the contract; (3) damages as a result of the breach; and (4) that the complaining party performed its own duties under the contract. *Pollack v. Quick Quality Restaurants, Inc.*, 452 N.J. Super. 174, 188 (App. Div. 2017) (citing *Globe Motor Co. v. Igdalev*, 225 N.J. 469, 482 (2016)).

Plaintiff does not plausibly plead breach of contract. There is a contract, the Agreement. However, pursuant to the express terms of the Agreement, Plaintiff does not plausibly allege that Blink breached the contract; to the contrary, Blink had a contractual right to the payment(s) at issue. Moreover, Plaintiff did not perform his own duties under the Agreement, that is, he did not provide appropriate and timely written notice of termination.

For the foregoing reasons, Counts 2 and 3 are dismissed without prejudice.

## IV. CONCLUSION

When granting a motion to dismiss pursuant to Rule 12(b)(6), a court must decide whether the dismissal will be with prejudice or without prejudice. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 110-11 (3d Cir. 2002). A district court may deny leave to amend if (a) the moving party's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the non-moving party or (b) the amendment would be futile. *Adams v. Gould, Inc.*, 739 F.2d 858, 864 (3d Cir. 1984). Here, any attempts to amend the EFTA count would be futile because it is precluded by the Agreement. Without the EFTA claim, this Court lacks subject matter jurisdiction because there is no longer a federal question presented. Diversity jurisdiction is not applicable because, among other things, the amount in controversy does not exceed $75,000.

Therefore, Count 1 is **DISMISSED with prejudice**. Counts 2 and 3 are **DISMISSED without prejudice** and the Complaint is **DISMISSED without prejudice** as to Defendant Todd Magazine. Because the EFTA count is dismissed with prejudice, Plaintiff may not file an amended complaint with this Court. As to the counts dismissed without prejudice, Plaintiff can file a matter in the relevant state court if he so chooses. The Court, however, is in no way indicating that if Plaintiff does file a matter in state court that the case will have any merit. An appropriate Order accompanies this Opinion.

Dated: November 28, 2018

John Michael Vazquez, U.S.D.J.